**LAMAR HOMES, INC., Plaintiff,**

v.

**MID–CONTINENT CASUALTY COMPANY, Defendant.**

**No. A–03–CA–553–LY.**

United States District Court,
W.D. Texas,
Austin Division.

Aug. 2, 2004.

Kevin R. Childs, Cathie Childs, Austin, TX, for Lamar Homes, Inc., plaintiff.

James Hans Barcus, J. Jonathan Hlavinka, Engvall and Hlavinka L.L.P., Richard P. Hogan, Jr., Hogan, Dubose & Townsend, John Jr. Engvall, Engvall and Hlavinka L.L.P., Houston, TX, for Mid–Continent Casualty Company, defendant.

### OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

YEAKEL, District Judge.

Before the Court are Plaintiff's Motion for Partial Summary Judgment filed October 24, 2003 (Doc. # 8); Defendant Mid–Continent Casualty Company's Response to Plaintiff's Motion for Partial Summary Judgment filed November 3, 2003 (Doc. # 12); Plaintiff Lamar Homes, Inc.'s Reply to Defendant's Response to Motion for Partial Summary Judgment filed November 13, 2003 (Doc. # 19); Defendant Mid–Continent Casualty Company's Cross–Mo-

tion for Final Summary Judgment filed February 25, 2004 (Doc. # 25); Plaintiff Lamar Homes, Inc.'s Response to Defendant Mid–Continent Casualty Company's Cross–Motion for Final Summary Judgment filed March 8, 2004 (Doc. # 29); Mid–Continent's Supplemental Brief Regarding Pending Motions for Summary Judgment filed May 21, 2004 (Doc. # 43); and Additional Briefing for Purposes of Plaintiff's Motion for Partial Summary Judgment filed May 21, 2004 (Doc. # 45). A hearing was held on the above-listed motions on June 4, 2004, at which the Court heard the arguments of counsel on both motions. Having reviewed the summary-judgment motions, responses, reply, and additional briefing, as well as all summary-judgment evidence submitted by the parties and the arguments of counsel at the hearing, the Court finds that Plaintiff's Motion for Partial Summary Judgment should be denied and Defendant's Cross–Motion for Final Summary Judgment should be granted for the following reasons.

## I. Background

This declaratory judgment action involves the defense and indemnity obligation of Defendant Mid–Continent Casualty Company ("Mid–Continent") owed to Plaintiff Lamar Homes, Inc. ("Lamar") in connection with the following underlying state-court litigation: *Vincent M. and Janice D. DiMare v. Lamar Homes, Inc., et al.,* Cause No. GN 300137, in the 53rd Judicial District Court of Travis County, Texas (the "*DiMare* Litigation"). Mid–Continent filed what it termed a "cross-motion" seeking a determination from the Court that it does not have a duty to defend or indemnify Lamar in connection with the underlying litigation.

Mid–Continent issued a commercial general liability policy to Lamar, number 04–GL–0000563 83, effective July 1, 2001, through July 1, 2002 (the "Policy"). In March 2003, Lamar was served with the petition in the *DiMare* Litigation, which was subsequently amended. On March 13, 2003, Lamar tendered the *DiMare* Litigation to Mid–Continent and requested a defense and indemnification. On April 30, 2003, Mid–Continent denied coverage to Lamar for the claims asserted in the *DiMare* Litigation. Lamar filed suit against Mid–Continent in the 201st Judicial District Court of Travis County, Texas on July 8, 2003. Mid–Continent removed the cause to this Court.

Lamar filed a motion for partial summary judgment, and Mid–Continent filed a "cross-motion" for final summary judgment. A hearing was held before this Court on both motions on June 4, 2004, at which the parties agreed to limit the Court's consideration on the motions to the sole issue of whether Mid–Continent owed a duty to defend Lamar in the *DiMare* Litigation.

## II. Analysis

### A. Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Allen v. Rapides Parish Sch. Bd.,* 204 F.3d 619, 621 (5th Cir.2000) (internal quotations and citations omitted). When both parties move for summary judgment, the court reviews each party's

motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party. *Ford Motor Co. v. Texas Dept. of Transp.*, 264 F.3d 493, 498 (5th Cir.2001) (citing *Taylor v. Gregg,* 36 F.3d 453, 455 (5th Cir.1994)). Doubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party. *See Burch v. City of Nacogdoches,* 174 F.3d 615, 619 (5th Cir.1999). However, "[n]either 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the non-movant's burden," *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir. 1996), and only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## B. The "Eight–Corners Rule"

■ In a diversity case such as this one, this Court must apply the substantive law of Texas. *See Harken Exploration Co. v. Sphere Drake Ins. P.L.C.,* 261 F.3d 466, 470 n. 3 (5th Cir.2001). The limited issue before this Court is whether Mid–Continent owed a duty to defend Lamar in the underlying state-court litigation. Texas courts apply the "eight-corners" or "complaint allegation" rule in deciding whether an insurer owes a duty to defend. *Potomac Ins. Co. v. Jayhawk Med. Acceptance Corp.,* 198 F.3d 548, 551 (5th Cir. 2000); *King v. Dallas Fire Ins. Co.,* 85 S.W.3d 185, 187 (Tex.2002). Under the rule, courts must determine whether an insurer owes a duty to defend "solely from the allegations in the most recent [underlying] petition and the language of the insurance policy." *Harken Exploration Co.,* 261 F.3d at 471; *King,* 85 S.W.3d at 187.

■ The insured bears the burden of showing that the claim against it is poten-

tially within the insurance policy's scope of coverage. *Harken Exploration Co.,* 261 F.3d at 471. There can be shifting burdens involved if the insurer relies on the policy's exclusions to deny coverage. *Id.* In this dispute, however, Mid–Continent concedes that the exclusions do not apply. Therefore, the burden remains with Lamar to prove that the *DiMare* Litigation is within the scope of coverage of the Policy.

■ Under the eight-corners rule, this Court must look to the most recent petition in the *DiMare* Litigation to determine whether the alleged misconduct on the part of Lamar triggered coverage by Mid–Continent. "The general rule is that the insurer is obligated to defend [its insured] if there is, potentially, a case under the [underlying petition] within the coverage of the policy." *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997) (quoted in *Harken Exploration Co.,* 261 F.3d at 471). "The focus of this inquiry is on the facts alleged, not on the actual legal theories." *St. Paul Fire & Marine Ins. Co. v. Green Tree Fin.,* 249 F.3d 389, 392 (5th Cir.2001) (citing *Maayeh v. Trinity Lloyds Ins. Co.,* 850 S.W.2d 193, 195 (Tex.App.—Dallas 1992, no writ)). "Those allegations are to be considered 'without reference to the truth or falsity of such allegations.'" *King,* 85 S.W.3d at 191 (citing *Argonaut Southwest Ins. Co. v. Maupin,* 500 S.W.2d 633, 635 (Tex.1973)). "If there is a 'doubt as to whether or not the [factual] allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in [the] insured's favor.'" *Harken Exploration Co.,* 261 F.3d at 471 (quoting *Merchants Fast Motor Lines, Inc.,* 939 S.W.2d at 141); *King,* 85 S.W.3d at 187.

■ The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The Policy, however, does not define the term "accident." Thus, this Court must give accident its plain, ordinary, and generally accepted meaning. *Harken Exploration Co.,* 261 F.3d at 472 (citing *Western Reserve Life Ins. v. Meadows,* 152 Tex. 559, 261 S.W.2d 554, 557 (1953)). Although the Texas Supreme Court has not articulated a hard and fast rule for when an accident occurs, *see Mid–Century Ins. Co. v. Lindsey,* 997 S.W.2d 153, 155 (Tex.1999), that court has held that an "accident" includes the "negligent acts of the insured causing damage which is undesigned and unexpected," *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 828 (Tex.1997). Thus, an insured's negligent acts that cause undesigned and unexpected damage would qualify as an accident included in the definition of an occurrence covered under the Policy.

This Court must look to the factual allegations contained in the most recent petition in the *DiMare* Litigation to determine whether they allege an occurrence as discussed above. Plaintiffs' First Amended Petition (the "petition") is the last live pleading in the *DiMare* Litigation and alleges the following in Paragraphs VII.C. and XI.A.:

> Plaintiffs will show that Lamar Homes failed to design and/or construct the foundation of the residence in a good and workmanlike fashion. The defects in Plaintiffs' residence include, but are not limited to, the following:
>
> i.  excessive deflection of foundation;
> ii. foundation not constructed sufficiently stiffly to withstand differential movements of soil underlying such foundation;
> iii. cracks in the sheetrock and stone veneer of the residence;  and,

> iv. binding and ghosting doors.

.    .    .    .    .

> Plaintiffs will show that Lamar Homes failed to use the skill and care in the performance of its duties commensurate with the requirements of the home building industry in connection with the original design of the foundation and of the residence. The conduct of Lamar Homes therefore constitutes negligence and such negligence was a proximate cause of actual damages to Plaintiffs in an amount within the jurisdictional limits of this court.

Lamar maintains that these allegations constitute an "occurrence" covered by the Policy resulting in "property damage" caused by Lamar's negligence or reliance on the work of subcontractors or both. "Property damage" is defined in the Policy as "[p]hysical injury to tangible property, including all resulting loss of use of that property ... or [l]oss of use of tangible property that is not physically injured."

Mid–Continent asserts that the petition in the *DiMare* Litigation does not allege factual allegations constituting property damage required for coverage under the Policy, but instead alleges only economic loss resulting from construction defects, not an "accident," and therefore not an "occurrence" under the terms of the Policy. Mid–Continent further argues that the petition alleges only that Lamar did not live up to its contractual obligations, and that the conclusory allegations of negligence asserted in the petition cannot overcome the factual allegations that demonstrate a construction-defect claim arising in contract, not in tort.

■ Although the acts of a party may breach duties simultaneously in tort and contract, the nature of the injury determines which duty is breached. *See Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d

617, 618 (Tex.1986). "When the injury is only the economic loss to the subject of the contract itself, the action sounds in contract alone." *Id.* (citing *Mid Continent Aircraft Corp. v. Curry County Spraying Serv.*, 572 S.W.2d 308, 312 (Tex.1978); *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77 (Tex.1977)). *Nobility Homes* defines direct economic loss as encompassing

> damage based on insufficient product value; thus, direct economic loss may be "out of pocket"—the difference in value between what is given and received—or "loss of bargain"—the difference between the value of what is received and its value as represented. Direct economic loss also may be measured by costs of replacement and repair.

*Nobility Homes,* 557 S.W.2d at 78 n. 1 (citing Note, *Economic Loss in Products Liability Jurisprudence,* 66 Colum. L.Rev. 917, 918 (1966)). The Texas Supreme Court goes on to cite with approval court of appeals' language noting the distinction between commercial (or economic) loss and physical harm or damage to property. *Id.* at 80 (citing *Melody Home Mfg. Co. v. Morrison,* 455 S.W.2d 825, 826 (Tex. Civ. App—Houston [1st] 1970, no writ)). It is clear to this Court that Texas law requires something other than economic loss to trigger coverage under a commercial general liability insurance policy.

■■■ "The purpose of comprehensive liability insurance coverage for a builder is to protect the insured from liability resulting from property damage (or bodily injury) caused by the insured's product, but not for the replacement or repair of that product." *Jim Johnson Homes, Inc. v. Mid–Continent Cas. Co.,* 244 F.Supp.2d 706, 714 (N.D.Tex.2003) (citing *Bateson Constr. Co. v. Lumbermens Mut. Cas. Co.,* 784 S.W.2d 692, 694–95 (Tex.App.—Houston [14th Dist.] 1989, writ denied)). "[I]f an insurance policy were to be interpreted

as providing coverage for construction deficiencies, the effect would be to 'enable a contractor to receive initial payment for the work from the homeowner, then receive subsequent payment from his insurance company to repair and correct deficiencies in his own work.'" *Id.* (quoting *Bateson Constr. Co.,* 784 S.W.2d at 694–95). Thus, if the factual allegations read as a contractual breach for construction defects requiring repair or replacement instead of negligence resulting in property damage, the resulting damage for economic loss does not fall within the coverage of the insurance policy.

Several federal district courts in Texas have found coverage where "the underlying complaint contained broad allegations of negligence, i.e., that the insured failed to construct the home in 'a good and workmanlike manner.'" *Acceptance Ins. Co. v. Newport Classic Homes, Inc.,* No. Civ. A.3:99–CV–2010BC, 2001 WL 1478791, at *3 (N.D.Tex. Nov. 19, 2001); *see also Luxury Living, Inc. v. Mid–Continent Cas. Co.,* No. Civ. A. H–02–3166, 2003 WL 22116202, at *15 (S.D.Tex. Sept. 10, 2003); *Great Am. Ins. Co. v. Calli Homes, Inc.,* 236 F.Supp.2d 693, 699–700 (S.D.Tex. 2002); *First Tex. Homes. Inc. v. Mid–Continent Cas. Co.,* No. 3–00–CV–1048–BD, 2001 WL 238112, at *3 (N.D.Tex. Mar. 7, 2001). This Court finds these cases unpersuasive, as they all involve an overly broad reading of the Fifth Circuit's opinion in *Federated Mutual Insurance Co. v. Grapevine Excavation, Inc.,* 197 F.3d 720 (5th Cir.1999).

In *Grapevine Excavation,* the Fifth Circuit compared two seemingly contradictory Texas Supreme Court cases and their progeny, finding that an occurrence, for coverage purposes, is not present where a tort is intentional, *see id.* at 724 (citing *Argonaut Southwest Ins. Co. v. Maupin,* 500 S.W.2d 633 (Tex.1973)), but may be where the negligent acts of the insured

cause damage that is undesigned and unexpected, *see id.* at 725 (citing *Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396 (Tex.1967)). Choosing to apply *Orkin* to the case before it, the circuit stated, "[C]ourts have consistently held that damage wreaked on the work product of a third party—as opposed to that of the insured—is presumed to have been unexpected and, therefore, constitutes an accident or an occurrence." *Id.* (footnotes omitted). The court found coverage based on the underlying petition, which alleged that the insured "by virtue of failing to install the correct select fill, ... *negligently,* damaged the work of [a third-party] paving contractor. Therefore, an 'occurrence' is alleged within the four corners of the [underlying plaintiff's] complaint, and that triggers coverage." *Id.* at 726. *Grapevine Excavation* does no more than recognize that an occurrence or accident *may* be present when an insured is negligent and *is* present when that negligence harms a third party, *see id.* at 724–25, but *is not* present when the insured commits an intentional tort, *see id.* at 724.

None of the post-*Grapevine Excavation* federal district court cases consider *Jim Walter Homes,* decided by the Texas Supreme Court after *Maupin* and *Orkin.*[1] This Court is persuaded that with *Jim Walter Homes* the Texas Supreme Court intended that the underlying petition be examined to determine if the cause of action sounds in contract or tort. If contract, there is no occurrence or accident. Here, in spite of broad negligence allegations by the underlying plaintiffs, the gravamen of the complaint is breach of warranty: Lamar Homes did not build the DiMares' home in the fashion and to the standard to which Lamar Homes repre-

sented to the DiMares that it would. An examination of the factual allegations in the *DiMare* Litigation petition leads this Court to conclude that the DiMares allege loss for repair and replacement caused solely by defects in the design and construction of their home. "The [DiMares'] injury was that the house they were promised and paid for was not the house they received." *Jim Walter Homes, Inc.,* 711 S.W.2d at 618. The conclusory allegations of negligence contained in the petition cannot serve to overcome the specific facts involved in that suit. "Artful pleading suggesting that [the insured's] acts were negligent or reckless 'cannot overcome the basic facts underlying [the] claims.'" *Jim Johnson Homes, Inc.,* 244 F.Supp.2d at 716–17 (quoting *American States Ins. Co. v. Bailey,* 133 F.3d 363, 372 (5th Cir.1998)). Therefore, applying the eight-corners rule, this Court concludes that Mid–Continent does not owe a duty to defend Lamar in the *DiMare* Litigation.

### III. Conclusion

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. # 8) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Mid–Continent Casualty Company's Cross–Motion for Final Summary Judgment (Doc. # 25) is **GRANTED.**

**IT IS FINALLY ORDERED** and **DECLARED** that Defendant Mid–Continent Casualty Company does not have, and has not had, any obligation under policy number 04–GL–0000563 83 to provide a defense to Plaintiff Lamar Homes, Inc.

---

1. *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617 (Tex.1986) (decided May 14, 1986); *Argonaut Southwest Ins. Co. v. Maupin,* 500 S.W.2d 633 (Tex.1973) (decided October 17, 1973); *Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co.,* 416 S.W.2d 396 (Tex.1967) (decided May 31, 1967).